# UNITED STATES DISTRICT COURT
for the

Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>ANDREW SPRECHER<br>(DOB: XX/XX/1979)<br><br>*Defendant(s)* | )<br>)<br>) Case No. 23-1837M(NJ)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __September and October 2023__ in the county of __Milwaukee__ in the __Eastern__ District of __Wisconsin__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(3) & 924(a)(8) | Drug User in Possession of a Firearm |
| 18 U.S.C. §§ 922(a)(6) & 924(a)(2) | Providing False Information to a Federally Licensed Firearms Dealer |

This criminal complaint is based on these facts:

Please see attached Affidavit.

☑ Continued on the attached sheet.

**FRANK RUTTER**
Digitally signed by FRANK RUTTER
Date: 2023.10.25 09:40:18 -05'00'

*Complainant's signature*

Frank Rutter, Special Agent, ATF
*Printed name and title*

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: 10/25/2023

*[signature]*
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Frank Rutter, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since 2015. As an ATF Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

2. Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

3. I have relied on informants to investigate firearms trafficking and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to conduct "controlled purchases" of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

4. Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes. Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

5. I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

6. I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all my knowledge about this matter.

8. Based upon the evidence gathered to date, I submit that there is probable cause to believe that Andrew Sprecher (DOB XX/XX/1979) has violated Title 18, United States Code, Sections 922(g)(3) and 924(a)(8) (drug user in possession of a firearm) and Title 18, United States

Code, Sections 922(a)(6) and 924(a)(2) (providing material false information to a federally licensed firearms dealer during the purchase of a firearm).

## PROBABLE CAUSE

9. On September 22, 2023, your affiant spoke with United States Secret Service (USSS) Special Agent (SA) Breyen Canfield about a building which had been recently struck by gunfire in downtown Milwaukee, Wisconsin. SA Canfield explained that the tenant of the building which had been struck by gunfire was the Republican National Convention. USSS requested the assistance of ATF while investigating the matter alongside the Milwaukee Police Department (MPD).

10. On Monday, September 18, 2023, at around 10:00 a.m., tenants of the fifth floor of the Associated Bank Building located at 111 E. Kilbourn Avenue in Milwaukee, Wisconsin, observed glass on the desk and floor of an office space. They also observed a hole in the wall which was believed to be a bullet hole. The Milwaukee Police Department was notified, and law enforcement officers began investigating the incident. It was subsequently learned that the office space was being leased by the Republican National Convention. It was established that office cleaners were last in the space on the evening of Friday, September 15, 2023, at approximately 10:00 p.m., and there were no issues observed at that time. The space was unoccupied from then until Monday, September 18, 2023, around 10:00 a.m., when tenants observed the damage. MPD later extracted a bullet fragment from the wall and SA Rutter subsequently observed the recovered bullet fragment which appeared consistent with that of a pistol caliber.

11. The office space faces west and looks out over the Milwaukee River. MPD determined there were two plausible buildings from which the gunfire could have come. The first being a law office at 840 N. Plankinton Avenue and the other being Riverside Lofts at 823 N. 2nd

Street. A representative from the law firm explained they were unaware of any recent gunfire in the area and their building had security cameras. A subsequent interview with the law firm building manager revealed no one accessed their building over the entire weekend. MPD determined the better lead between the two buildings was that of Riverside Lofts. The office space looks directly at Riverside Lofts located at 823 N. 2nd Street, in Milwaukee, Wisconsin.

12. MPD canvased Riverside Lofts and attempted interviews with residents on several of the higher-level floors of the building. The initial complaint and MPD's investigation is documented under MPD Incident Report #23-261-0551. No interviewed resident mentioned hearing gunfire over the weekend and the building management explained no tenant had access to the rooftop.

13. On September 22, 2023, SA Canfield and other investigators met with members of the Milwaukee County Sheriff's Office (MCSO) sniper team. MCSO sniper team members measured the height of the bullet hole in the wall, the height of the bullet hole in the window, and the distance between the two points. The team directed a laser from the wall, at the proper angle, and through the hole in the window. They were able to see the laser hit the Riverside Lofts building at 823 N. 2nd Street. Given the effect of the window on the path of the bullet, the sniper team narrowed down the most likely area from which the round was fired to be on the 7th, 8th, or 9th floors of the Riverside Lofts.

14. A query of recent MPD CAD calls for service at Riverside Lofts revealed G.L. called 911 on September 20, 2023, to report on the 7th floor she heard a female screaming "help, help, someone call the police." During a subsequent interview with law enforcement, G.L. described who she thought was a black male wearing red/black shirt near a white female who had pink hair. G.L. explained they were standing outside of apartment #706. G.L. explained the female

4

walked towards the stairwell and G.L. heard a male voice say they were going to shoot someone. G.L. did not report whether the male voice was that of the black male or someone else.

15. MPD and SA Canfield were able to identify the tenant of apartment 706 as Andrew P. Sprecher (XX/XX/1979). SA Canfield determined Sprecher had a disorderly conduct conviction involving a firearm in 2021 out of Dane County, Wisconsin (Case 2021CM000947). Your affiant is aware Apartment 706 of Riverside Lofts is within the target area of the suspected shooting incident. Based upon interviews and other evidence, some of which is detailed below, law enforcement has since learned that Sprecher is a user of illegal controlled substances, specifically marijuana.

16. A query of Wisconsin Department of Motor Vehicle records revealed Sprecher's address of record is 823 N. 2nd Street, Apartment 706, in Milwaukee.

17. On September 25, 2023, a telephonic phone interview was conducted with Sprecher's ex-girlfriend, G.V., who stated they were previously in a romantic relationship for approximately seven years and had lived together in Madison, Wisconsin. G.V. explained that Sprecher had a hydroponic marijuana grow operation in their home that involved the use of barrels filled with rocks. G.V. stated Sprecher sold and consumed the marijuana he grew. G.V. explained Sprecher got his first firearm in approximately 2017 or 2018 following a conflict with a co-worker. G.V. described how Sprecher makes veiled threats including statements about being dangerous and that he might hurt somebody. G.V. explained Sprecher abuses medications which were prescribed to treat bipolar and social anxiety disorders. Sprecher has told G.V. in the past that some people deserve to die and Sprecher has spoken of wanting to kill people. G.V. explained Sprecher remains angry at law enforcement following his Disorderly Conduct incident in Madison and has made threats of suicide by cop. G.V. identified 823 N. 2nd Street, Apartment 706 in

Milwaukee, Wisconsin as the address which Sprecher moved to after they ended their relationship. G.V. explained Sprecher was a daily marijuana user for the entirety of their relationship, but G.V. has not seen him use marijuana following their breakup.

18. On September 26, 2023, investigators attempted to interview Sprecher at his apartment located at 823 N. 2nd Street, Apartment 706 in Milwaukee, Wisconsin. Sprecher stated he was the only person who resided in the apartment. Sprecher provided inconsistent statements surrounding his activity over the weekend involving the shooting incident. Sprecher explained he did not hear any gunshots over the weekend. During the interview, Det. Osmanski observed two large plastic barrels and additional plastic containers along the wall inside Sprecher's apartment.

19. On September 27, 2023, MPD conducted a recorded telephonic interview with Andrew Sprecher's sister, J.E. J.E. explained that she went to Sprecher's apartment before he was released from the mental hospital in September 2023. Records indicated Sprecher was released on September 8, 2023. J.E explained she removed two loaded firearms from Sprecher's residence during this visit. J.E. described them as a .357 and another revolver. J.E. related Sprecher came back from the mental hospital in worse shape than before he went in. J.E. described how Sprecher always talks about wanting to kill an ex-girlfriend. J.E. told investigators she believed he would kill this ex-girlfriend and act on his impulses.

20. J.E. read a text message to investigators that she received from Sprecher on September 20, 2023. The message read, "I wish I had good news for you, I bought a fucking Glock the day after you wisely took my firearms. I don't know what to say, I appreciate your help, at this point I am beyond saving."

21. Affiant is aware a follow up interview was completed with J.E. during which she explained Sprecher is currently and has been a daily marijuana user for years.

6

22. Records reflect that on September 10, 2023, Sprecher initiated the purchase of a Glock pistol (Model 26, 9mm, bearing serial no. ADYU734) from Brew City Shooter's Supply, a federally licensed firearms (FFL) dealer, located at 2339 S. 43rd Street in Milwaukee, Wisconsin. During this purchase, Sprecher had to complete ATF Form 4473, which is a firearm transaction record that is required by federal law. This document contains a wealth of information including, but not limited to, the purchaser's name, address, and a signature attesting all the information they provided is true, correct and complete. Additionally, this signature attests that the purchaser is aware lying on the form is a federal felony.

23. On the form, Sprecher provided his address as the 823 N. 2nd Street, Apartment 706, in Milwaukee, Wisconsin.

24. It should be noted, the background check related to the aforementioned firearm purchase yielded a "delayed" response, meaning the results were inconclusive and more time was needed before a determination could be made. If no response is received within 3 additional business days, the FFL can legally transfer the firearm. The firearm was later transferred to Sprecher on September 11, 2023, after the results of the background check resulted in a "proceed."

25. Sprecher answered "no" to question 21 (f) which stated, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? **Warning:** The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside." Sprecher filled out the ATF Form 4473 on September 10, 2023, and took possession of the firearm on September 11, 2023, at which time he again affixed his signature attesting that his answers were still true, correct, and complete.

26. In February 2022, Sprecher was convicted of Disorderly Conduct in Dane County, Wisconsin, and in April 2022 a firearm was ordered to be released to Sprecher. The subject firearm was a Ruger .357 magnum revolver.

27. Details of the case revealed that the arrest stemmed from an alleged stalking incident involving Sprecher's ex-girlfriend, G.V., who reported that she was terrified of what Sprecher was capable of doing to her since he has nothing to lose. G.V. had explained she knew Sprecher to be in possession of numerous handguns and rifles. When asked if she believed Sprecher was capable of killing her, she began to cry and said that answering that question was too difficult. A domestic violence danger assessment was completed, and G.V. was provided with the necessary information to obtain a temporary restraining order. When officers later located Sprecher on his porch, he denied stalking his ex-girlfriend, but was in possession of concealed .357 magnum revolver.

28. Milwaukee Police Department CAD history for 911 calls involving Sprecher revealed the following:

   a. August 11, 2023: Caller states she is concerned that her brother, identified in the call as Andrew Sprecher, may harm others. He sent her a text "stating he is going to his HR department fully loaded and that people will take him serious but will not shoot up the place. Caller states he (Sprecher) was at home at the moment, stated he is bipolar, unsure if he takes meds. States he has made threats/statements in the past but nothing this serious. Caller states the male (Sprecher) previously got rid of his guns but has gotten a new one. Caller states the brother (Sprecher) was recently voluntarily hospitalized because he felt that he was a danger to self and others, states her brother (Sprecher) is an alcoholic.

b. August 31, 2023: Suicide hotline states male subject, identified in the call as Andrew Sprecher, was chatting with them stating he is suicidal and homicidal, states he doesn't feel safe to be alone or around people, Sprecher told the representative he has a firearm on him currently, Magnum 357, stated he would put it away when the police arrive to help him.

c. September 2, 2023: Suicide hotline call during which Sprecher reported that he was armed and an immediate threat to himself and others. Sprecher did not say what kind of weapon he has. Sprecher called from telephone number 608-213-3251.

  i. On that same date, MPD responded to 823 N. 2nd Street and made contact with Sprecher who stated he did not "feel right" and that he may harm himself. Sprecher was voluntarily conveyed to the Milwaukee Mental Health Emergency Center (MHEC). While at MHEC, Sprecher made statements about wanting to leave and that he was going to kill "some people" before killing himself. Sprecher communicated he had been told the problem with his brain was unfixable and he had no reason to live. Sprecher requested to be discharged and stated he has three guns at home and was talking about killing other before killing himself. Practitioners attempted to place a "hold" on Sprecher, and called MPD. At some point thereafter, Sprecher was released from the MHEC. Your affiant is aware Officer Kulcinski documented that Sprecher posed an immediate threat to himself and others in that he may shoot and kill.

29. On October 5, 2023, SA Rutter located a publicly visible Facebook page displaying vanity name "Goose Egg Sprecher" and URL https://www.facebook.com/andrewsprecher. SA Rutter compared a photograph from the aforementioned Facebook page with a driver's license image of Sprecher and found the images to be consistent and to represent the same individual.

30. SA Rutter observed numerous pictures of what appeared to be marijuana posted to Sprecher's Facebook page. Additionally, SA Rutter located an image of what appeared be a Kel-Tec KSG 12-gauge shotgun. Two of the images observed on Sprecher's Facebook page are included below:




31. On October 18, 2023, personnel from ATF executed a federal search warrant at Sprecher's residence located at 823 N. 2nd Street, Apartment 706, in Milwaukee, Wisconsin. The search warrant was authorized by Federal Magistrate Judge Nancy Joseph on October 16, 2023.

32. During the search of Sprecher's apartment, agents located numerous items of evidentiary value including, but not limited to:

    a. a Glock model 26, 9mm pistol, bearing serial no. ADYU734;

    b. approximately 92 grams of green leafy substance (weight includes packaging);

10

c. various rounds of ammunition;

d. a spent 9mm ammunition shell casing;

e. drug paraphernalia such as smoking apparatuses, grinders, and digital scales;

f. a Samsung smartphone; and

33. firearm purchase paperwork dated July 26, 2023, for a Beretta pistol with serial number 2003811X.

34. In addition to the aforementioned items that were recovered, agents also observed other weapons such as a makeshift morning star bat and an axe. Agents also observed a message that appeared to have been written in blood on a table. The message read: "I want it to stop."




35. While agents were conducting the search of the residence, SA Rutter and SA Sean Carlson conducted a recorded, non-custodial interview of Sprecher in a stairwell located adjacent to his 7th floor apartment. Prior to any questioning, agents had informed Sprecher he was not under arrest and had the right to stop answering questions at any time. SA Rutter explained the search warrant and that agents were searching the residence for items related to the use of

11

controlled substances and his possession of firearms. When agents asked Sprecher if they would locate any controlled substances inside his apartment, Sprecher stated that agents would locate marijuana inside the residence. Sprecher then explained to agents he possessed it for his personal use. When agents mentioned the hydroponic growing equipment they observed inside his apartment and alluded to Sprecher selling marijuana, he said that he "got out of the game." Sprecher stated he previously used the hydroponic equipment to grow marijuana, but he did not currently use it for that purpose. Sprecher elaborated on his pattern of drug use and stated he smoked marijuana on a daily basis in order to help him relax at the end of the day.

36. SA Rutter showed Sprecher a copy of the ATF Form 4473 firearm transaction record related to his purchase and acquisition of a Glock 26, 9mm pistol, bearing serial number ADYU734 on September 11, 2023, from Brew City Shooter's Supply in Milwaukee, Wisconsin (*See* paragraphs 25-28 above). SA Rutter confirmed with Sprecher that his (Sprecher's) signature appeared on Line 22 where he affixed it testifying his answers were true, correct, and complete, and also acknowledging that falsifying any information on the form was federal felony.

37. SA Rutter read aloud question 21 (f) which related to unlawful users of controlled substances, including marijuana, and that their possession of firearms was a federal violation. It should be noted Sprecher previously answered he was not an unlawful user of any controlled substance, including marijuana, when he completed the ATF Form 4473 when he purchased the aforementioned firearm.

38. SA Rutter asked Sprecher if he lied on the form, and Sprecher responded he did not want to answer any additional questions.

## CONCLUSION

39. Based on the foregoing, I believe there is probable cause to believe that Andrew Sprecher has committed violations of federal law, including Title 18, United States Code, Sections 922(g)(3) and 924(a)(8) (unlawful drug user in possession of firearms) and Title 18, United States Code, Sections 922(a)(6) and 924(a)(2) (providing materially false information to a federally licensed firearms dealer during the purchase of a firearm).